John T. VANCE, Appellant,

v.

STATE of Indiana, Appellee.

No. 41S00–9306–CR–0642.

Supreme Court of Indiana.

Sept. 9, 1994.

Roy L. Dickinson, Franklin, for appellant.

Pamela Carter, Atty. Gen., Lisa Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Justice.

Following a jury trial, John Vance was found guilty of the murder[1] of his mother, and sentenced to 60 years. In addition, he was convicted of Conspiracy to Commit Murder,[2] Robbery,[3] and Conspiracy to Commit Robbery.[4] Vance was sentenced to thirty, twenty, and ten years respectively for these crimes. The sentences were to be served consecutively.

In his direct appeal to this Court under Indiana Appellate Rule 4(A)(7), Vance raises three issues:

1. Whether his waiver to adult court was legally effective;

2. Whether there was sufficient evidence to support his conviction for Conspiracy to Commit Murder and Conspiracy to Commit Robbery; and

---

1. Ind.Code § 35–42–1–1(1) (1993).

2. Ind.Code § 35–42–1–1(1) and Ind.Code § 35–41–5–2 (1993).

3. Ind.Code § 35–42–5–1(1) (1993).

4. Ind.Code § 35–41–5–2 and Ind.Code § 35–42–5–1(1).

3. Whether he was entitled to a mistrial because the State did not disclose the substance of a witness's statement in discovery.

### Facts

The evidence most favorable to the verdict reveals the following. Vance and his mother had a tumultuous relationship. On several occasions prior to her death, he had threatened to kill her. On August 9, 1991, when his mother was murdered, Vance was fifteen years old. Vance's mother died of a blunt force injury to her head and stab wounds to the neck. Evidence at the crime scene suggested a violent struggle. Blood was spattered throughout several rooms of the home; blood and hair traces were found on several household instruments including a toaster, hammer, glass mug, and casserole dish.

The day before the killing, a neighbor heard Vance ask Danny Simpson if they were "gonna do it." Simpson responded that a plan was necessary. On the afternoon of the murder, Simpson and Vance arrived at Simpson's girlfriend's home in a car belonging to Vance's mother. Both had blood on their clothing and bodies. After being dropped off in Indianapolis, Vance was seen walking down the street with blood on his left arm and side. The police were telephoned. Vance told them that Simpson had killed his mother. Vance was taken into custody. Two days later, he told his grandfather that he had murdered his mother. While in jail awaiting trial, Vance told several inmates how Simpson and he together had killed his mother.

Simpson and his girlfriend drove the victim's car to Tennessee. During that trip, Simpson told his girlfriend that Vance had killed his mother. In a separate trial, Simpson was convicted of murder and robbery. *See Simpson v. State* (1994), Ind.App., 628 N.E.2d 1215, *trans. pending.*

---

**5.** Indiana Code § 31–6–2–4(d) provides:
   Upon motion of the prosecutor and after full investigation and hearing, the juvenile court shall waive jurisdiction if it finds that:
   (1) The child is charged with an act that would be murder if committed by an adult;
   (2) There is probable cause to believe that the child has committed the act;  and

### Waiver

Vance was fifteen years old at the time the crimes were committed;  he was initially subject to the exclusive jurisdiction of the juvenile court. Ind.Code § 31–6–2–1.1(a)(1) (1991). There were two waiver hearings: the first was held in August, 1991 when Vance was charged with murder;  the second was held in May, 1992 when conspiracy and robbery charges were filed. Vance asserts reversible error occurred at each hearing.

**Waiver hearing on murder charge.** First, Vance argues that the trial court denied his right to due process by refusing his request for a continuance. Thus, he reasons, the waiver was improper, the adult court never obtained jurisdiction over him and, as a result, his conviction for murder is a nullity.

The record reflects that Vance's public defender was appointed on Saturday, August 10. The first court appearance took place on Monday, August 12. On the same day, the State filed a Petition Alleging Delinquency that charged Vance with Murder and, pursuant to Indiana Code § 31–6–2–4(d) (1991),[5] requested that Vance be waived to adult court. Defense counsel objected to proceeding with the waiver hearing on August 12 and requested a continuance in order to prepare. The trial court denied the request. The following exchange took place:

> [Defense Counsel]: Your honor, at this point in time for the record, the court knows it appointed me I think last Saturday. Again, I only got the probable cause affidavit and I've just received the petition alleging delinquency, the Order on petition alleging delinquency and the motion to waive and I have no way to prepare to go forward because I have not had an opportunity to examine the pleadings and I certainly want to make that as matter of record.

(3) The child was ten (10) years of age or older when the act charged was allegedly committed;  unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.

Court: Again, due to the mandatory language of the statute, the Court overrules the motion for continuance. Should the Court determine waiver appropriate, the court will, upon request, provide for the preliminary hearing or habeas corpus hearing to be held at the request of the Defendant.

. . . .

Court: [to Defense counsel] I realize that you previously moved for a continuance which has been denied, do you have any evidence which you wish to present at this point?

[Defense Counsel]: No, Your Honor. I have not been able to be put in a posture where I could be able to respond to the pleadings which have been filed.

The court found that Vance was charged with an act that would be murder if committed by an adult, that there was probable cause to believe that Vance committed the murder, and that the safety and welfare of the community would be best served by the waiver. The juvenile court then waived jurisdiction.

■ The substance of Vance's argument is that he was entitled to additional time so that his attorney could gather evidence to show that waiver was not appropriate and that the refusal of the trial court to allow additional time violated Vance's due process rights. It is now well-established that juveniles are entitled to basic requirements of due process and fair treatment during waiver hearings, including "the right to present evidence, if any be available to him, of any circumstances that would entitled him to the benefits that might be afforded to him by the provisions of the Juvenile Act." *Summers v. State* (1967), 248 Ind. 551, 560, 230 N.E.2d 320, 325 (following *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)).

■ The record suggests that the trial court was of the opinion that waiver was mandatory for murder charges. However, for children under the age of sixteen, as Vance was, there is merely a presumption that jurisdiction will be waived. Ind.Code § 31-6-2-4(d); *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 289, *cert. denied,* 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773;

*Trotter v. State* (1981), Ind., 429 N.E.2d 637, 640. The presumption operates in favor of waiver "unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system." Ind. Code § 31-6-2-4(d). Thus, it was possible that had Vance been granted a continuance, he might have gathered evidence to overcome the presumption of waiver.

■ Moreover, the waiver statute specifically provides that the juvenile court may not waive jurisdiction until "after full investigation and hearing." Ind.Code § 31-6-2-4(d). *Summers* instructs that the record "should be sufficient to demonstrate unequivocally that the strict statutory requirement of a full investigation and hearing has been met and that a conscientious determination of the question of waiver has been made." 248 Ind. at 559-60, 230 N.E.2d at 325. In short, the investigation and hearing is not to be a perfunctory proceeding, but is one intended to protect the full panoply of rights provided by our state and federal constitutions.

■ We acknowledge, as the State points out, that denials of motions for continuance not based on statutory grounds are committed to the sound discretion of the trial court, *Gordon v. State* (1993), Ind., 609 N.E.2d 1085, 1088, and that continuances allowing for preparation are not favored. *Baxter v. State* (1988), Ind., 522 N.E.2d 362, 366. But under the circumstances here, where a mere two days elapsed between the time counsel was appointed for Vance on Saturday and the waiver hearing on Monday, and where Vance requested a continuance, one was required in order that the statutory full investigation could take place and Vance could marshall evidence as to why he should remain in the juvenile justice system.

■ This does not end our inquiry, however. Not all trial court error is reversible error. Ind.Trial Rule 61. For the denial of a continuance to be reversible error, the defendant must demonstrate the prejudicial abuse of discretion by a specific showing that additional time would have aided the defense. *Clark v. State* (1989), Ind., 539 N.E.2d 9, 11. Here, other than the mere assertion in his

brief, Vance has failed to explain how additional time would have assisted him, what evidence he could have sought or secured with the additional time, what new strategy he could have employed, or how his original strategy was impaired by a lack of time to prepare. Had there been no other waiver hearing in this case, we might be inclined to conclude that the trial court's abuse of discretion in denying the continuance was reversible error. However, by the time of the second hearing, Vance had sufficient time to gather such information as might persuade the juvenile court that jurisdiction should not be waived on the other charges filed against him, and he also had a full and fair opportunity to present evidence to that effect at the second hearing. In as much as Vance failed to convince the court that waiver was inappropriate on the other charges, we are persuaded that he was not prejudiced by his lack of time to prepare for the hearing on the murder charge and, therefore, the denial of the continuance was harmless error.

***Waiver hearing on robbery and conspiracy charges.*** In May, 1992, the State filed a second petition alleging delinquency that charged Vance with Conspiracy to Commit Murder, Robbery, and Conspiracy to Commit Robbery. These charges arose out of the same incident as the murder. The petition requested that Vance be waived to adult court on these charges. On June 30, 1992, following a second waiver hearing, the court granted the State's request for waiver.

Vance challenges the validity of the second waiver on several grounds: (1) misstatements of law in the order; (2) erroneous incorporation of evidence from the first waiver hearing into the second; and (3) failure of the order to include specific findings in support of the waiver.

First, Vance claims that the waiver was ineffective because paragraph two of the order refers to a statute and case law that do not apply to him.[6] It is true that Indiana Code § 31–6–2–1.1(d)(6)(A), does not apply to Vance because he was only 15 years old at the time the crimes were committed. However, it is equally true that the order itself acknowledges that this statute does not apply. Moreover, the remaining portions of the order demonstrates that the trial court relied upon the proper statute, Indiana Code § 31–6–2–4(b), in the waiver order.[7]

---

**6.** The second waiver order, entered June 30, 1992, read:

1. This is the second waiver hearing held regarding the activities of John Vance on August 9, 1991 and the victim, Carolyn Vance. The evidence of the August 12, 1991 hearing is incorporated herein, *sua sponte.*
2. The three counts most recently filed flow from or are part and parcel with the original murder charge.
3. I.C. 31–6–2–1.1(d)(6)(A), albeit perhaps applying to 16 year olds, gives legislative support to the concept that once waived, all criminal activity which stems from or are contemporaneously committed or aid in completion of the waived offense should also be waived. *See, Trotter v. State* (1981), Ind., 429 N.E.2d 637 and *Snodgrass v. State* (1980), 273 Ind. 148, 406 N.E.2d 641. *Contra, Harris v. State* (1980), Ind.App., 398 N.E.2d 1346.
4. The child herein was fourteen years of age or older when the acts charged were committed.
5. There is probable cause to believe that the child has committed the acts.
6. The child is beyond rehabilitation under the Juvenile System and, under I.C. 31–6–2–4(d) which was controlling at the time the first waiver hearing, this factor does not even apply.

**7.** It is in the best interest of the safety and welfare of the community for the child to stand trial as an adult.
Therefore, it is ORDERED that Juvenile Jurisdiction over this cause is waived to the Johnson Circuit court, a court that would have jurisdiction over the acts charged therein if the acts were committed by an adult, and said waiver being granted for all charges herein and any lesser offenses included herein.

**7.** Indiana Code § 31–6–2–4(b) provides:
Upon motion of the prosecutor and after full investigation and hearing, the juvenile court may waive jurisdiction if it finds that:
(1) The child is charged with an act:
(A) That is heinous or aggravated, with greater weight given to acts against the person than to acts against property; or
(B) That is a part of a repetitive pattern of delinquent acts, even though less serious;
(2) The child was fourteen (14) years of age or older when the act charged was allegedly committed;
(3) There is probable cause to believe that the child committed the act;
(4) The child is beyond rehabilitation under the juvenile justice system; and
(5) It is in the best interests of the safety and welfare of the community that the child stand trial as an adult.

Second, Vance attacks the trial court's incorporation of evidence from the first waiver hearing into the record of the second hearing: because he was not given adequate time to prepare for the first hearing, all evidence produced at the first hearing was "tainted" and should not have been admitted at the second hearing. Vance cites no authority for this proposition. In fact, Vance has never suggested that any evidence was improperly admitted at the waiver hearing, only that he was not given adequate time to gather evidence favorable to his case. This Court has previously allowed the use of evidence presented at an earlier waiver hearing to be used at a subsequent hearing. *See Gerrick v. State* (1983), Ind., 451 N.E.2d 327, 330–31. In addition, a trial court may take judicial notice of proceedings that have taken place in that court. *Id.* at 331. The incorporation of evidence from the first hearing was not error.

Third, Vance asserts that the waiver order was defective because it does not include findings specific enough to support the waiver. We disagree. The absence from the waiver order of the particular facts justifying waiver does not necessarily invalidate the waiver. This Court has recognized that the specific facts need not be recited in the order if the record contains sufficient facts for the court to find that waiver is appropriate. *Daniel v. State* (1991), Ind., 582 N.E.2d 364, 368; *Gerrick,* 451 N.E.2d at 330. *See also Thomas v. State* (1990), Ind.App., 562 N.E.2d 43, 45 (pre-printed waiver order is valid if the record from the hearing supports the waiver).

Our review of this record shows it contains all of the evidence necessary to support the waiver. The acts charged were offenses against the person, and the circumstances surrounding this brutal episode of criminal behavior, as presented at the hearing, more than adequately support a finding that the acts were heinous or aggravated. Vance was fifteen years old at the time the acts were committed. There was probable cause to believe that Vance committed the acts with which he was charged. Evidence was presented that Vance had previously been charged with Conversion (for shoplift-

ing) in 1988 and 1990, for which he was placed on probation. There was evidence that he violated the terms of that probation. A report from a court-appointed physician who examined Vance was also admitted. The report contained the conclusion that Vance was beyond rehabilitation in the juvenile system and that because the criminal acts were so serious, the best interests of the community and of Vance would be served by his standing trial as an adult. The report in the record thus assures us that all of the statutory requirements for waiver were met.

We review a juvenile court's decision to waive jurisdiction only for an abuse of discretion. *Daniel,* 582 N.E.2d at 367. It is for the juvenile court judge, after weighing the effects of retaining or waiving jurisdiction, to determine which is the more desirable alternative. *Gerrick,* 451 N.E.2d at 330. We find no error.

*Sufficiency of the Evidence*

Vance next claims there was insufficient evidence of any conspiracy to commit murder and robbery. In reviewing the sufficiency of the evidence, we neither re-weigh the evidence nor judge the credibility of the witnesses. Rather, we look only to the evidence most favorable to the trial court's judgment and to the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be disturbed. *Woods v. State* (1980), 274 Ind. 624, 629, 413 N.E.2d 572, 577.

To prove Conspiracy, the State must establish that the defendant had the intent to commit a crime, agreed with another person to commit that crime, and that some overt act was performed in furtherance of that agreement. Ind.Code § 35–41–5–2 (1993). Vance challenges the evidence of an agreement between Danny Simpson and himself. The State is not required to prove the existence of a formal express agreement. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1258. "It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to

commit the offense." *Williams v. State* (1980), 274 Ind. 94, 96, 409 N.E.2d 571, 573. The agreement may be proved either by direct or circumstantial evidence. *Abner*, 479 N.E.2d at 1258. However, mere association with the alleged co-conspirator is, standing alone, insufficient to support a conviction for Conspiracy. *Sutton v. State* (1986), Ind. App., 495 N.E.2d 253, 257.

Without citation, Vance argues that because the alleged co-conspirator, Danny Simpson, did not testify against Vance, the State was unable to prove any formal agreement between them. At most, Vance argues, the State proved only that Simpson and he were friends. Our review of the record shows otherwise.

▆ The evening before the murder, Vance was overheard to ask Simpson if they were "gonna do it," and Simpson responded that a plan was necessary. That same evening, Vance borrowed a hacksaw which he used to cut a handle off a shovel. The police found the blade of the shovel under the victim's bed and the handle in Vance's bedroom. Simpson met Vance at his mother's home the day of the murder. There was evidence that Vance knew his mother would cash her paycheck that day. Vance told his grandfather that he called his mother back into the bedroom for purposes of taking her money. Vance told fellow inmates that he had planned the murder, and he told his grandfather that Simpson and he had planned to rob his mother after she had cashed her paycheck. The jury could have reasonably inferred an agreement between Vance and Simpson to commit both robbery and murder. *See Davis v. State* (1988), Ind., 524 N.E.2d 305, 307.

### Prosecutorial misconduct

Finally, Vance claims reversible error occurred when his grandfather was permitted to testify at trial about a telephone conversation between them during which Vance confessed to participating in the murder. Vance argues admission of this testimony was error because the State failed to inform him of the contents of this conversation before trial.

▆ Pursuant to a discovery order, the State was required to produce "oral statements of persons whom the Prosecuting Attorney intends to call as witnesses." The record shows that Vance's grandfather reported Vance's confession to a deputy prosecutor during a telephone conversation. The deputy prosecutor made no notes concerning the conversation. The State identified the grandfather as a witness, but did not produce any material relating to the confession because none existed. Vance asserts that the State had an obligation to inform him of the contents of this conversation even if the State possessed no writing, but he cites no cases supporting his position.

In *Antrobus v. State* (1970), 253 Ind. 420, 254 N.E.2d 873, this Court set out the foundation required for the production of pretrial statements made by State witnesses:

An adequate foundation is laid when: (1) the witness whose statement is sought has testified on direct examination; (2) a substantially verbatim transcription of statements made by the witness prior to trial is shown to probably be within the control of the prosecution; and (3) the statements relate to matters covered in the witness' testimony in the present case.

253 Ind. at 427, 254 N.E.2d at 876–77. In *State ex rel. Crawford v. Super. Ct. of Lake County* (1990), Ind., 549 N.E.2d 374, 375–76, this Court recognized that defendants may be able to discover these statements before trial if the person making the statement appears on the State's list of anticipated trial witnesses. In such cases, the trial court has the discretion to presume that the foundation required in *Antrobus* has been established. Apparently, Vance would have us expand the current law to require the State to disclose the contents of an oral statement that has not been recorded or memorialized in any form. In *Washington v. State* (1980), 273 Ind. 156, 161, 402 N.E.2d 1244, 1248, this Court rejected as unworkable and unduly burdensome the defendant's argument that the State should be required to divulge statements of a crucial witness regardless of whether a written record of the statement was in the State's possession. We are not persuaded today that this rule is need of

change. *See also Merritte v. State* (1982), Ind.; 438 N.E.2d 754, 758 (witness's oral changes to prior written statement need not be disclosed if no written notes of the changes were made).

The grandfather's name appeared on the State's witness list. Vance has made no showing that he had difficulty locating his grandfather, *see Washington*, 402 N.E.2d at 1248, and therefore we presume that Vance could have contacted his grandfather on his own. In any event, the record discloses that defense counsel was aware of the content of the telephone conversation between Vance and his grandfather, and so its revelation should have come as no surprise at trial. The State did not fail to comply with the discovery order.

## Conclusion

Accordingly, we affirm the convictions for Murder, Conspiracy to Commit Murder, Robbery, and Conspiracy to Commit Robbery.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.