## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 28 2018, 6:45 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Cara Schaefer Wieneke<br>Brooklyn, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Caryn N. Szyper<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carl E. Mathis, Jr.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 28, 2018<br><br>Court of Appeals Case No.<br>47A01-1708-CR-1830<br><br>Appeal from the Lawrence<br>Superior Court<br><br>The Honorable Michael A.<br>Robbins, Judge<br><br>Trial Court Cause No.<br>47D01-1612-CM-1521 |

**Altice, Judge.**

## Case Summary

[1] Carl E. Mathis, Jr., appeals his Class A misdemeanor theft conviction. On appeal, Mathis argues that the trial court abused its discretion in admitting certain testimony.

[2] We affirm.

## Facts & Procedural History

[3] On Thanksgiving Day, November 24, 2016, Tina Roll was working as a cashier at a Bedford gas station. At around 4:00 p.m., Roll set her cell phone down on the counter next to the cash register. About twenty minutes later, Roll looked for the phone, but it was not where she had left it and she could not find it anywhere in the store.

[4] The next day, Roll met with Doug Brinkman, the owner of the gas station, to review security camera footage from the previous day. The footage showed a man later identified as Mathis enter the store and speak briefly with Roll before exiting the store. Mathis then came back inside and used a credit card to purchase a fountain drink and a pack of cigarettes. Mathis signed the credit card receipt and slid it across the counter to Roll, and while Roll's head was turned, he grabbed her cell phone from the counter and pocketed it before leaving the store.

[5] A week or two later, Mathis returned to the gas station while Roll was working. Mathis was wearing the same Carhart jacket he had been wearing on the day Roll's phone was stolen, and Roll recognized him from the security footage.

Roll confronted Mathis, saying "you're the guy that took my phone aren't you?". *Transcript Vol. 2* at 158. Mathis responded, "if I did it's at my house." *Id.* at 159. Roll told Mathis "well [you] best go get it." *Id.* Mathis left the store, but he never returned with Roll's cell phone.

[6] As a result of these events, Mathis was charged with Class A misdemeanor theft. The case proceeded to a jury trial on July 13, 2017, at which Brinkman, Roll, and the investigating officer all testified for the State. Through Brinkman's testimony, the State admitted into evidence the credit card receipt Mathis signed on the day of the theft. The receipt was not itemized; instead, it listed a purchase of $16.63 worth of "gen auto merch." *Exhibit Volume*, State's Ex. 1. The credit card transaction took place at 4:21 p.m. The time stamp on the security camera showed the thief taking Roll's phone at 4:12 p.m., but Brinkman testified that security cameras are not synced with the cash register or credit card machine, and that the security camera "lose[s] time" because it is not connected to the internet. *Transcript Vol. 2* at 138. Brinkman testified that he had seen on the video that the thief had entered the store, spoken to Roll, then exited and reentered the store, which led Brinkman to believe that the thief had purchased gas in addition to the cigarettes and fountain drink shown on the video. Brinkman testified that the gas station's credit card machine and cash register function separately, and that he had looked back through the cash register's electronic records for the time period in question and found a transaction for a fountain drink, a pack of cigarettes, and ten dollars' worth of gas. The transaction total was $16.63—i.e., the same amount reflected on the

credit card receipt Mathis signed. Mathis objected on the basis that he had not been provided with information concerning the cash register records prior to trial. The trial court overruled Mathis's objection, and Brinkman's testimony continued.

[7] During a subsequent recess, Mathis renewed his objection to Brinkman's testimony concerning the register transaction records based on the State's alleged failure to provide the information in discovery. The State responded that there were no physical records of the register transactions available to the State or being offered into evidence, and that Brinkman had been timely disclosed as a witness. Mathis then raised a new objection to Brinkman's testimony regarding the register transaction records, arguing that it was hearsay not falling within the business records exception. Mathis's objections were overruled, and the trial continued. During her testimony, Roll identified Mathis as the individual who stole her phone and she testified concerning her confrontation with Mathis when he returned to the gas station a week or two later.

[8] At the conclusion of the evidence, the jury found Mathis guilty as charged. Mathis was sentenced to ninety days in jail, with thirty days suspended to probation. Mathis now appeals.

## Discussion & Decision

[9] On appeal, Mathis argues that the trial court abused its discretion in admitting Brinkman's testimony concerning the cash register transaction records. Trial

courts have broad discretion in ruling on the admissibility of evidence, and such rulings will be reversed only upon a showing of an abuse of that discretion. *Palilonis v. State*, 970 N.E.2d 713, 725 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's ruling is clearly against the logic and effect of the facts and circumstances before it. *Id*. In reviewing a trial court's evidentiary rulings, we will not reweigh the evidence, and we will consider conflicting evidence most favorable to the trial court's ruling. *Id.* We also consider uncontroverted evidence in the defendant's favor. *Joseph v. State*, 975 N.E.2d 420, 424 (Ind. Ct. App. 2012).

[10] Mathis first argues that the testimony was inadmissible because the State failed to inform him during pretrial discovery that Brinkman would be testifying to the contents of the register transaction records. It is undisputed that the State did not offer any undisclosed documents into evidence and that all of its witnesses, including Brinkman, were identified before the deadline established by the trial court. Mathis seems to suggest that the State was required to provide summaries of its lay witnesses' expected testimony, but he has cited no authority to support such a conclusion.[1] *See Vance v. State*, 640 N.E.2d 51, 58-59 (Ind. 1994) (rejecting defendant's argument that the State was required to inform him of the substance of a lay witness's expected testimony prior to trial). Mathis has not established that the State committed a discovery violation with

---

[1] Mathis's reliance on *Beauchamp v. State*, 788 N.E.2d 881, 892-94 (Ind. Ct. App. 2003), is misplaced because it addressed the disclosure of an expert's opinion and the duty to supplement discovery responses.

respect to Brinkman's testimony, and the trial court did not abuse its discretion in overruling Mathis's objection on that basis.

[11]     Mathis next argues that Brinkman's testimony concerning the register transaction records was inadmissible hearsay, but he has not preserved this issue for appeal. The failure to make a contemporaneous objection to evidence when it is offered waives a claim of error in its admission on appeal. *See Bean v. State*, 913 N.E.2d 243, 253 (Ind. Ct. App. 2009) (finding objection raised shortly after the admission of the challenged testimony to be untimely and therefore waived), *trans. denied*. Because Mathis did not raise his hearsay objection until well after the admission of the complained-of testimony, this argument is not available to him on appeal.

[12]     Waiver notwithstanding, and assuming *arguendo* that Brinkman's testimony was inadmissible hearsay, the error was harmless. "An error is harmless when the probable impact of the erroneously admitted or excluded evidence on the jury, in light of all the evidence presented, is sufficiently minor so as not to affect the defendant's substantial rights." *Troutner v. State*, 951 N.E.2d 603, 612 (Ind. Ct. App. 2011), *trans. denied*. Mathis's defense in this case was misidentification— that is, he claimed that he was not the man shown in the surveillance video stealing Roll's phone. The State presented significant evidence to rebut this defense. In addition to the surveillance video itself, the State presented the credit card receipt signed by "Mathis/Carl", which was time-stamped within minutes of the surveillance footage, along with Brinkman's testimony explaining that the minor time discrepancy could be attributed to the fact that

the credit card machine and surveillance system do not sync and the surveillance system "lose[s] time" because it is not connected to the internet. *Exhibit Volume*, State's Ex. 1; *Transcript Vol. 2* at 138. Additionally, Roll testified that she remembered waiting on the man shown stealing her phone on the security footage on Thanksgiving Day and that she recognized him when he returned to the gas station a week or two later. When Roll accused the man of stealing her phone, he responded "well if I did it's at my house." *Transcript Vol. 2* at 161. Roll identified Mathis as the man shown on the surveillance video taking her phone and the man she confronted a week or two later. In light of the video evidence and Roll's eyewitness testimony, we are satisfied that the impact of Brinkman's testimony concerning the register transaction records was relatively minor and did not affect Mathis's substantial rights.

[13]   Judgment affirmed.

[14]   May, J. and Vaidik, C.J., concur.